## PITTSBURGH COAL CO. v. BOYD.

(Circuit Court of Appeals, Third Circuit. June 3, 1920.)

No. 2550.

**Wharves** &⇒20 (1)—**Liability of owner for negligence in moving sunken boat of another.**

Where libelant's houseboat, moored for the winter at defendant's wharf with its consent, but without payment, sank and was drifted by high water to where it endangered boats of defendant, in moving it for their protection defendant *held* bound to exercise ordinary care not to injure it, and liable for its loss solely through the negligent manner in which it was handled and secured afterward.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

---

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in admiralty by Bert Boyd against the Pittsburgh Coal Company. Decree for libelant, and respondent appeals. Affirmed.

O. K. Price and Don Rose, both of Pittsburgh, Pa., for appellant. Lowrie C. Barton, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. Boyd, the appellee, claiming that a houseboat which belonged to him had been wrecked through the negligence of those in charge of the steamboat Active, which was owned by the Pittsburgh Coal Company, the appellant, filed a libel in the court below against the steamboat to recover the damages which he thus sustained, and was awarded the decree from which this appeal is taken.

It appears that some months prior to February, 1917, Boyd, with the consent of the appellant, but without any compensation to the latter, had moored his houseboat at a wharf or landing of the appellant on the Monongahela river, at Monongahela City, Pa. In the latter part of February, due to some cause which the evidence does not disclose, but presumably through no fault attributable to the appellant, the houseboat sank. It remained in that condition until March 9th, when the river had risen to a flood stage, and the houseboat had drifted partially under or very close to one or more of the boats of the appellant, which were moored there. Thereupon one of appellant's superintendents, becoming apprehensive that the houseboat would endanger the safety of some of the appellant's fleet, ordered those in charge of the Active to move the houseboat. As all of the latter, except the upper part of the cabin, was then submerged, a hole was cut in the roof of the cabin, and a line, which was attached to the capstan of the steamboat and passed through a snatchblock, fastened to the shore abutment, was made fast to one of the roof timbers. The engine of the Active was then started, and the houseboat was pulled a short distance up the river and sidewise towards the shore, where it was made fast with a line running from one of the roof timbers of the cabin, through the hole in the roof, to a post on shore, and apparently, although the evidence seems to be conflicting on this point, by a line from one of the hulls of the boat to the abutment. She was left in this position, and a few days thereafter, as the river receded, the cabin collapsed and the boat broke up and became a total loss.

Whether the appellant was a gratuitous bailee of the houseboat, and subject to the general duties and liabilities as such, as libelant contends and as the court below held, or whether, as appellant contends, it owed to the libelant merely the duties which the owner of real property owes to a licensee, seems to us immaterial. The negligence relied upon is not the failure to care for the boat while she was moored at the landing, but in the way in which those in charge of the Active moved and left the houseboat, when she was in a sunken condition and becoming a menace to the safety of appellant's fleet. We have no doubt that appellant was entirely justified in moving the houseboat, and in

adopting for that purpose such means as were reasonably necessary. But we are also entirely satisfied that, under general principles, when the appellant's employés undertook to move it, they were required to use reasonable and due care to avoid, so far as was possible, any unnecessary injury to the houseboat, and that a failure to exercise that degree of care would visit upon the appellant liability for any damages which the houseboat might sustain as a result of such failure. Although the evidence is in several respects conflicting and unsatisfactory, we have no difficulty in finding that the appellant's employés did not exercise the care which they were required to exercise.

We think it needs no argument to demonstrate that it was negligence, in the sense before mentioned, to attach a line to the roof timbers of a flimsy cabin of a sunken houseboat and to shift the position thereof through that means, if it were possible to attach a line to a more substantial part of the boat. As the boat was submerged, it is undoubtedly true that it was not possible, in the beginning of the maneuver, to attach a line to its hull or hulls (the boat had two hulls). But the evidence is that the houseboat then was, and had been for a long time, fastened by a wire cable to one of the abutments leading out from the shore. We also think that the existence of this cable could have been easily ascertained, if the appellant's employés had made even slight efforts to locate it. The boat had been moored by this cable for several months, and it is incredible to believe that the superintendent, who directed the moving of the houseboat, did not know of its existence. The only legitimate inference from the evidence is that, if the houseboat had been moved by means of this wire cable, as could readily have been done, rather than by the line which was attached to the roof of the cabin, and properly made fast thereafter, that the cabin would not have been pulled off of the hulls, or, at any rate, so strained and loosened that it subsequently collapsed.

Not only were the appellant's employés in charge of the steamboat negligent in the respect just discussed, but they also failed, in our judgment, to exercise that degree of care which they were required to in fastening the houseboat. In moving it they had pulled it not only upstream, but in towards the shore, so that it was lying partially on its side. As before stated, they then fastened a line from the roof timbers of the cabin to a post on shore, so that, when the waters of the river receded, an additional strain was put upon the cabin, with the consequent result that shortly thereafter the whole cabin collapsed. The hulls, or one of them, thereafter broke in two, due to the fact that the boat had been left and securely fastened over an uneven part of the shore, and rested thereon when the waters of the river subsided. It is no answer to these acts of negligence to say that the libelant should have done something more than he attempted to do (we do not wish to be understood as indicating that he did not do all that he reasonably could have done) in the way of raising or moving the houseboat between the time that he was first notified that it was sunk and the time when it became necessary for appellant's employés to move it, because the respect in which the appellant was negligent was the manner in which it moved and fastened the houseboat.

Nor do we think that the evidence would justify the finding that, in the short time which intervened between the time when it was first brought to the libelant's attention that the boat had been moved and practically overturned, and the time when she actually broke up, he failed to do anything that he could reasonably have done to have lessened the damage which the boat had already suffered. Although the evidence regarding the value of the vessel and the personal property which was stored therein, and the extent of the damage to the latter, is, as was said by the learned judge of the court below, unsatisfactory, still we think that the sum awarded by him is as just and proper as could be fixed.

The decree below is accordingly affirmed, with costs.